Anna E. **PARKER**

v.

The **BOARD OF SCHOOL COMMISSIONERS OF the CITY OF INDIANAPOLIS.**

No. IP 81–92–C.

United States District Court, S.D. Indiana, Indianapolis Division.

March 9, 1983.

he may so amend.

Belle T. Choate, Indianapolis, Ind., for plaintiff.

Susan Tabler of Ice, Miller, Donadio & Ryan, Indianapolis, Ind., for defendant.

## MEMORANDUM ENTRY

NOLAND, District Judge.

The facts are undisputed. Plaintiff, a white female, has been employed as a teacher by the Indianapolis Public Schools (I.P.S.) for forty-five (45) years. Following nine years as a junior high school teacher, she has served in the school system's Sight-Saving Program providing special classes for hearing and vision impaired students. For the past two years, Ms. Parker has also taught regular high school classes.

Plaintiff obtained her Master's Degree in 1943 and has completed at least thirty additional graduate hours since that date. She has never held a position within the Indianapolis Public Schools designated as "supervisory" or "administrative", and until 1980, she had not applied for one.

In 1980, defendant announced three openings for the position of vice-principal. The procedures used to fill the vacancies were as follows: Notice of the vacancies was disseminated.[1] The I.P.S. Personnel Department conducted initial screenings to assure that the minimum qualifications were satisfied. Interviews with the I.P.S. Interview Committee were conducted and ratings assigned based on specific criteria. The Interview Committee chairman submitted the committee's recommendations to the I.P.S. Superintendent who, after reviewing the selections with the I.P.S. affirmative action officer for compliance with discrimination laws and the school system's affirmative action guidelines, forwarded them to the School Board. The Board made the final decision.

The applicant pool included thirty-six (36) people: Twenty-six (26) male, ten (10) female. Initial screening reduced the number to twenty-six (26): eighteen (18) men, eight (8) women.

Plaintiff specifically limited her application to the vacancy at Arsenal Technical High School. Joseph McGeehan was hired for that position. In addition to a Master's Degree and thirty (30) additional graduate hours, McGeehan had completed the course work for a Ph.D. Degree in education. He held an Indiana Superintendent Provisional License. McGeehan had seven (7) years experience in supervisory positions within the I.P.S.

Plaintiff contends that McGeehan's selection as Vice-Principal constitutes sex discrimination violative of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.,* and 42 U.S.C. § 1983.

---

1. The notice included the following:

    *Primary Functions:* Assist the high school principal, as directed, in providing leadership in administering and supervising the instructional program and/or managing the affairs related to the operation and maintenance of the school facilities.

    *Qualifications:* Master's degree plus 30 graduate hours required. A minimum of five years experience in education. Experience as a supervisor or department head in a subject area preferred. Practical experience in business operations and knowledge of budgetary procedures desirable.

    *Certification:* Hold appropriate Indiana Certificate for Secondary School Administration and Supervision or can readily obtain one.

*Proof of an Employer's Discriminatory Intent is Essential to Claims Under Both Title VII and Section 1983.*

■ Analysis of Title VII actions entails a tripartite inquiry. Plaintiff carries the initial burden of establishing a *prima facie* case.[2] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Thereafter, the burden of production shifts to the employer to articulate a non-discriminatory reason for not hiring plaintiff.[3] Once defendant proffers a justification, plaintiff must discredit the bona fides of the explanation. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

■ Under § 1983 a plaintiff must prove an employer's discriminatory intent. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).

*Plaintiff Has Not Established Her Employer's Discriminatory Intent. Her Claims Must Fail.*

Assuming, arguendo, that plaintiff has successfully established her Title VII *prima facie* case, she has failed to adequately discredit defendant's explanation of its action, i.e., she has not demonstrated the discriminatory intent essential to the third phase of her Title VII action and her § 1983 *prima facie* case. Her claims, therefore, must fail.

■ Defendant asserts that McGeehan was hired because of his superior qualifications. This constitutes a legitimate basis for selection and, unless discredited, will be sufficient to defeat a claim of discrimination. *Holder v. Old Ben Coal Company,* 618 F.2d 1198, 1202 (7th Cir.1980).

Plaintiff has produced no evidence indicating that the asserted difference in applicant qualifications is in fact a pretext for sex discrimination. Indeed, on this record it is doubtful that such showing could be made. Thirty-one percent (31%) of those interviewed and thirty-three percent (33%) of those hired were women. Within the I.P.S. system as a whole, seventeen percent (17%) of persons meeting the minimum requirements for vice-principal were women; sixteen percent (16%) of the system's vice-principals are in fact women. With respect to administrative positions in general, fifty-four percent (54%) of applicants in 1980 were female; fifty-four percent (54%) of those hired were women.

The Court empathizes with plaintiff's situation. When many "qualified" applicants seek a position some must necessarily be disappointed. This, however, does not constitute an action under Title VII or § 1983. Neither of those statutes were intended as vehicles for reassessing the wisdom of non-discriminatory employment decisions. The judicial system is not equipped for such a task. Rather, the judiciary's function in these cases is to examine the selection process for impermissible racial or sexual bias. Where none exists, the employer's decision must stand. Such is the instant case.

This memorandum of decision shall constitute the findings of fact and conclusions of law under the provisions of the Federal Rules of Civil Procedure Rule 52(a).

---

**2.** The elements of a Title VII *prima facie* case are: that plaintiff belongs to a protected class; that she applied and was qualified for a job for which the employer was seeking applicants; that despite her qualifications, the complainant was denied employment; and that the position remained open and the employer continued to seek applications from persons with the same qualifications as plaintiff.

**3.** The burden of *proof* remains with plaintiff throughout. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).